168 So.2d 183 (1964)
Luther J. EVANS, Petitioner,
v.
Edwin N. HYDEMAN, Jack Klinger, Joseph F. Lawless, Isidore Levy, Thomas J. McGinty, Stuart L. Moore, Edward Sloan, Howard Steele, James L. Weiskopf, Richard R. White, and G. Dudley Harris, Respondents.
No. 3773.
District Court of Appeal of Florida. Second District.
August 26, 1964.
Rehearing Denied September 24, 1964.
*184 McCune, Hiaasen, Crum & Ferris, Fort Lauderdale, for petitioner.
Burns, Middleton, Rogers & Farrell, Palm Beach, for respondents.
KANNER, Judge (Ret.).
A default order and final judgment consequent upon it were obtained in the court below by defendant-petitioner, Luther J. Evans, against the plaintiffs-respondents, Edwin N. Hydeman, Jack Klinger, Joseph F. Lawless, Isidore Levy, Thomas J. McGinty, Stuart L. Moore, Edward Sloan, Howard Steele, James L. Weiskopf, Richard R. White, and G. Dudley Harris, for failure to plead defensively to a counterclaim. Subsequently, the trial court entered an order setting aside the default and final judgment. Evans then filed in this court a petition "For the Extraordinary Relief of Mandamus, Certiorari, Common Law Certiorari and Prohibition" directed against the mentioned vacating order. There was also filed an appeal. The petition containing the combination of remedies was denied; then this court ordered that the notice of appeal and the transcript of the record be treated and considered as a petition for writ of certiorari.
The salient issues which have emerged relate to jurisdictional power of the trial judge to enter the order setting aside the default and final judgment and the propriety of his action in doing so under the facts and procedures set out by the record as these relate to plaintiffs' motion to vacate.
By their amended complaint filed on July 27, 1962, against Evans and Empire Industries, Inc., plaintiffs sued upon a promissory note executed by Empire in the principal sum of $100,000 and endorsed by Evans. On August 1, Empire's attorney moved for a continuance, stating that he was a member of the Florida Legislature and that this body had on that day been called into special session. The court on August 7 entered an order staying the proceedings and granting a continuance for the period of the legislative session and fifteen day subsequent to it.
On August 9, 1962, Evans filed an answer, setting up three defenses, the first two of which are not relevant here. The third defense was incorporated by reference as a cross-claim against Empire[1] and as the full counterclaim against plaintiffs, with the addition of a prayer divided into three parts. Since it carries the total substance of the counterclaim upon which the default and final judgment were rendered, we shall summarize below, in the main, the principal averments of this third defense.
In April, 1961, certain of the plaintiffs were elected as directors, officers, and executive committee members of Empire. Two of the plaintiffs, as president and treasurer, respectively, issued a total of 284,334 shares of stock of Empire to the eleven plaintiffs, who forty days later, or on November 22, 1961, transferred and sold to *185 Empire for $150,000 all of the stock thus acquired, payable $50,000 in cash and $100,000 through the promissory note sued upon; later, on the same day, those plaintiffs who were directors, officers, and executive committee members submitted their written resignations. Evans at no time was a stockholder, officer, director, or employee of Empire. Empire was never domesticated in Florida. The third defense described as illegal the corporate action of plaintiffs authorizing purchase by Empire of their shares of stock in the corporation, characterized as null and void the promissory note, and stated that Empire was insolvent and was forbidden by statute, section 608.13, F.S.A., from purchasing its own stock in the manner described.
Evans further averred that on November 20, 1961, he had been approached by the officers of Empire and persuaded and induced by representations as to the present and potential financial status of the corporate defendant to lend his credit to it and advance certain funds with which to enable it to purchase from plaintiffs all the shares of stock previously referred to for the consideration mentioned. Those representations were that Empire was solvent, that it owned valuable lands and personal property in Honduras and other Latin American countries, that plaintiffs were a group of dissident minority stockholders who constantly pursued obstructionist tactics to prevent Empire from performing its corporate purposes and realizing its potential financial advantages, that plaintiffs' stock could be purchased by Empire only if the purchase were finalized and completely consummated not later than November 22, 1961, and that, upon removal of plaintiffs, Empire could realize its potential success. These representations, continued the third defense, were false and were fraudulently made for the purpose of inducing Evans to act as he did within a short period of time without making any independent investigations. It was then stated that plaintiffs, acting by and through their agents, had actual knowledge of the representations, knew that they were false, and knew that Empire was without financial assets to pay its promissory note; further, that plaintiffs through their agents were directly the cause of Evans' becoming an accommodation endorser on the promissory note. Relying on these representations, Evans, on November 20, with his own funds purchased two cashiers checks payable to himself, one for $25,000 and the other for $50,000. On November 22, he endorsed and delivered to Empire Industries, Inc. the $25,000 check and endorsed and delivered the $50,000 check to Stuart L. Moore and Richard R. White as agents, the latter having been further endorsed for deposit to the account of Joseph F. Lawless-trustee, Stuart L. Moore, and Richard R. White. Evans received nothing for the funds thus advanced and received nothing for his endorsement of the promissory note.
The prayer of the counterclaim was a multiple one, seeking a money judgment against the plaintiffs in the sum of $50,000 plus interest, a decree adjudicating as null and void Evans' endorsement on the promissory note, and a further declaratory decree adjudicating as null and void the transaction between the plaintiffs and Empire.
Under date of September 19, 1962, Evans' counsel wrote to plaintiffs' attorneys a letter[2] which is at the core of this dispute and which dealt with time for filing of responsive *186 pleadings to the counterclaim. On November 29, 1962, Evans filed an application for default order and judgment. This application, subscribed to by oath of counsel for Evans, showed filing of Evans' answer with counterclaim and cross-claim; a copy of the letter footnoted below; departure of Evans' counsel for a vacation on September 22 and his return on October 19; motions of Empire to dismiss the amended complaint and the cross-claim on November 1 and November 5, respectively. The application went on to state that plaintiffs were required to file their reply or defensive motions within 20 days after service of the counterclaim, that the period expired Wednesday, August 29, that the September 19 letter gave additional time but that 112 days had expired without the filing of any responsive pleadings. In his final judgment which, with the default, was entered on November 29, 1962, the trial judge adjudicated as void the endorsement and delivery of the promissory note and the transaction between plaintiffs and Evans. All costs were taxed against the plaintiffs; and Evans was awarded a judgment of $50,000 plus interest. Plaintiffs, through their counsel, by sworn motion[3] filed on December 5, 1962, to set aside the default and judgment, attacked the time *187 basis set out in Evans' application and attacked the entry of the default and judgment. Evans' attorney, through affidavit dated December 5, 1962, in response to the motion to vacate, stated, in effect, that he never did receive any reply to the September 19 letter advising that the addresses accepted the terms of it.
The trial judge, on December 19, 1962, entered the order sought to be reviewed. Upon the hearing, he found the grounds assigned by the plaintiffs in support of their motion to be normally insufficient and gave reasons for his action in setting aside the default and judgment. He allowed plaintiffs to plead within ten days; this they did. The principal reason assigned by the trial judge for his vacating order was that he had mistakenly and inadvertently entered the default and judgment and, after further consideration, had found, in essence, that the answer departed from requirements of pleading, including those set out in Rule 1.8(c), Florida Rules of Civil Procedure, 30 F.S.A.; that the third defense did not assert a counterclaim; and that there was absence of proof to sustain the allegations of the counterclaim.
Considering the problem with which we are confronted, we start with the question of jurisdiction. Although Rule 2.9 deals with entry of a default, there is in Florida no rule like Federal Rule 55(c)[4] relating to the setting aside of a default; nor has there been any statute for that purpose since 1955. However, the supreme court, in a case relating to vacation of default before final judgment, that of North Shore Hospital, Inc. v. Barber, Fla. 1962, 143 So.2d 849, pointed out that section 50.10, F.S.A.,[5] providing for the opening of defaults, was repealed by the legislature through Chapter 29737, Laws of Florida, 1955, but stated that the legislative purpose was not abolishment of the procedure for vacating defaults. The court continued by saying that its cases decided under section 50.10, while not absolutely binding as authoritative precedents, should not be wholly disregarded, since they reveal the court's long standing policy of liberality towards vacating defaults. Upon repeal of the statute, said the court, the common law of the state as it had previously existed was revived, although the revival did not apply to those portions of the supreme court opinion[6] dealing with terms of *188 court as bearing on the time within which a motion to vacate a default must be made, since the subject was dealt with by Rule 1.6, Florida Rules of Civil Procedure[7] so that the common law, as to it, had not therefore been revived. It should be noted that the supreme court was careful to declare that through the repealing act "* * * the legislature did not intend thereby to abolish the long standing practice of the courts of vacating defaults in proper cases."
Rule 1.38(b), promulgated by the supreme court in 1962, affords relief from a final judgment, decree, order, or proceeding under specified conditions. This rule provides in part as follows:
"(b) Mistakes; Inadvertence; Excusable Neglect; Newly Discovered evidence; Fraud, etc. On motion and upon such terms as are just, the court may relieve a party or his legal representative from a final judgment, decree, order, or proceeding for the following reasons: (1) mistake, inadvertence, surprise, or excusable neglect; * * * (4) the judgment or decree is void; * * * The motion shall be made within a reasonable time, and for reasons (1), (2), and (3) not more than one year after judgment, decree, order, or proceeding was entered or taken * * *."
The above quoted rule is substantially the same as Federal Rule 60(b), as shown by the committee note added to 1.38(b), as well as by comparison of it with the federal rule.
Evans urges that Rule 1.38(b) could not be utilized here, since the case was long pending before October 1, 1962, which he claims was the effective date established by the order of the supreme court in 142 So.2d 725, said by him to have superseded the order reported in 139 So.2d 129, relied upon by plaintiffs. An added contention is that plaintiffs did not invoke the rule. Further, Evans states that the rule is not self-executing, and the judge of the lower court could not act on his own motion but, rather, to activate his jurisdiction, an appropriate motion of the aggrieved party is required.
We find with respect to the effective date of Rule 1.38(b), that the supreme court's order in 139 So.2d 129, supra, establishes this as being July 1, 1962.
Insofar as is concerned Evans' assertion that plaintiffs did not invoke Rule 1.38(b), the fact that they did not by designation or allusion refer to the rule in their motion does not mean that they could not use it. It has been said of Federal Rule 60(b) that "* * * Nomenclature is unimportant. A petition for one of the old common law or equitable remedies, which have been abolished, may properly be treated as a motion for relief under 60(b). And a motion that is made under Rule 59, which is not timely and hence may not properly be considered under that Rule, may, nevertheless, be considered as a motion under Rule 60 when it states grounds for relief under this latter rule." 7 Moore's Federal Practice, page 214. This same authority says at page 299, "Since nomenclature is unimportant, the moving papers may be treated as a motion under 60(b), although mislabelled." The motion of plaintiffs is entitled "MOTION TO SET ASIDE DEFAULT AND FINAL JUDGMENT CONSEQUENT UPON THE ENTRY OF A DEFAULT"; its prayer is that the default and judgment be vacated; its content is in support of that objective. Thus, failure of plaintiffs to denominate or make reference to Rule 1.38(b) does not deprive them of their right to employ or rely upon it.
*189 As to the contention that jurisdiction of the court becomes activated only upon appropriate motion of the aggrieved party, Evans insists that this requirement was not fulfilled but that the court was acting upon its own motion. Although there was use of the words, "upon its own motion," the trial judge, having found the grounds asserted to be normally insufficient, granted the relief sought, giving his reasons therefor, including some stated in the motion. The motion evoked the hearing, out of which came the sole order, or the one sought to be reviewed, vacating the default and judgment.
We have the view that the motion comes within Rule 1.38(b), which expressly empowers the trial court to act as provided therein subsequent to entry of final judgment. From what has been indicated, we are impelled to the conclusion, under the circumstances reflected in connection with the motion, that the court was vested with jurisdiction to act with respect to the default and final judgment.
We turn now to the question of whether or not the trial judge abused his discretion in rendering the vacating order. The established rule in Florida, either as to the opening of defaults or the vacating of judgments, is that these are matters of judicial discretion and that, in case of reasonable doubt, where there has been no trial upon the merits, this discretion is usually exercised in favor of granting the application for such a procedure so as to permit determination of the controversy upon the merits. North Shore Hospital, Inc. v. Barber, supra; Coggin v. Barfield, 1942, 150 Fla. 551, 8 So.2d 9; Stevens-Davis Co. v. Stock, 1940, 141 Fla. 714, 193 So. 745.
Evans stresses that 112 days had expired from the filing of the answer with counterclaim to the filing of the application for default and judgment and states that the due date for responsive pleadings to the counterclaim was August 29, 1962. As one may see from the time sequence set out earlier, cognizance should be taken of the court's order of August 7 staying the proceedings, the filing of the answer with counterclaim two days after commencement of the stay, or on August 9, which, together with the letter of September 19, depict a situation different from one where there has been a simple, uninterrupted running of 112 days' time.
Plaintiffs' sworn motion to vacate stands unrefuted; the affidavit in response to it alleges only a failure to receive a reply advising that the terms of the letter had been accepted. So, from the motion, there appear the undisputed statements that Evans' counsel, in a telephone conversation between himself and plaintiffs' counsel prior to due date of defensive pleadings, had agreed to an indefinite extension of time in which to file responsive pleadings; that, during this telephone conversation, counsel for the parties had agreed, in view of the stay order, that the time for filing any papers in the action was in doubt and that neither fully understood the consequences of the stay order with regard to the proper time for pleading; that Evans' counsel informed plaintiffs' attorney he had no interest in pressing the proceedings and that plaintiffs' counsel might have all the time he desired in which to file responsive pleadings; that the September 19 letter contained the paragraph stating, "I am leaving this weekend for a thirty-day northern vacation and will not return to the state until the latter part of October. Hence, if you need additional time to file your responsive pleadings, it is satisfactory to me." There were also the averments that plaintiffs relied on the telephone conversation and the letter, assuming that there was all the necessary additional time needed or such time as might elapse until Evans' attorney advised to the contrary; that Evans' counsel, prior to seeking ex parte entry of a default and judgment, should have contacted plaintiffs' counsel terminating the open-end extension of time.
The September 19 letter concluded with the language, "I hope you will be good enough to allow the case to remain in abeyance until my return, for there is no one in our firm who is even slightly familiar with the case." So it may be seen that, on the *190 part of Evans' counsel, he expected nothing to be done until his return. It does not appear that plaintiffs' counsel knew of his return or that there was any further communication until after entry of the default and judgment.
Upon learning of what had transpired, plaintiffs moved promptly, or within six days, to set aside the default and judgment.
Although the trial judge found the motion insufficient, we deem it adequate; and, from our consideration of the record, plaintiffs are entitled to relief from the default and judgment, basically because of mistake and misunderstanding between counsel for the respective parties arising out of communication between them through the mentioned letter and telephone conversation upon the subject of the filing of responsive pleadings by plaintiffs' counsel.
For comparison, we refer to several instances where defaults or judgments have been opened under situations where there was a complete failure to plead on time, with no question of time extension at all, such as we have here. In Stevens-Davis Co. v. Stock, supra, the ground for vacating of a default judgment was that the default had been allowed by pure mistake and misunderstanding of counsel and their stenographer, who failed to file an appearance. The recent case of North Shore Hospital, Inc., v. Barber, supra, involved a showing that inadvertence of the defendant hospital's administrative staff had resulted in failure to deliver summons to counsel until some time subsequent to return date. In Segel v. Staiber, 1932, 106 Fla. 946, 144 So. 875, the defaulting defendant was found to have had the right to rely on the court's established custom to notify all attorneys practicing before it of the sounding of the docket and of mailing a printed list of cases set for trial to attorneys of record. Coggin v. Barfield, supra, is a case in which the defendant's plea was mailed to the clerk within ample time but had been sent to the wrong county by mistake; the clerk in the court to which the plea had been sent advised the clerk in the court where the action was pending that the plea was being mailed for filing; the declaration furnished the defendant by plaintiff, it appeared, indicated in the title that the case was pending in the county to which the plea had been sent.
The federal courts, in their construction of Federal Rule 60(b) have consistently held that the rule is remedial and that it is to be given a liberal construction. 7 Moore's Federal Practice, pages 230-231, section 60.22(2). Thus, in Tozer v. Charles A. Krause Milling Co., 189 F.2d 242, 245 (CA 1951), the principle was enunciated:
"The recent cases applying Rule 60 (b) have uniformly held that it must be given a liberal construction. Matters involving large sums should not be determined by default judgments if it can reasonably be avoided. Henry v. Metropolitan Life Ins. Co., D.C.Va., 1942, 3 F.D.R. 142, 144. Any doubt should be resolved in favor of the petition to set aside the judgment so that cases may be decided on their merits. Huntington Cab Co. v. American Fidelity & Casualty Co., D.C.W.Va., 1945, 4 F.D.R. 496, 498; Standard Grate Bar Co. v. Defense Plant Corp., D.C.Pa., 1944, 3 F.R.D. 371, 372. Since the interests of justice are best served by a trial on the merits, only after a careful study of all relevant considerations should courts refuse to open default judgments."
It is to be observed that one of the factors in the present case is the fact that a large sum of money is involved.
Evans' counsel insists that the entry of the default and judgment conformed to every requirement. What we must consider here, however, is not just the procedural aspects connected with application for and entry of the default and judgment; but there is also the question of whether the court's entry of the vacating order is justified under *191 conditions which, pursuant to settled principles, permit relief, if warranted, from the default and judgment so that an opportunity may be had for the case to be tried upon its merits. The Florida jurisdiction, through numerous decisions, has for many, many years recognized as grounds for relief as to defaults and default judgments, without statute or court rule denominating them, reasons that are named in the recently adopted Rule 1.38(b). Moreover, there has long existed in Florida the policy of liberality in the opening of defaults and the vacating of judgments to the end that substantial justice might be achieved. We are of the conviction that the trial judge did not go beyond the boundary of his discretionary power. We therefore reiterate that plaintiffs should have the relief sought under their motion.
Over and beyond the basic determination which we have expressed, we have also mentioned that, even though the trial judge found plaintiffs' motion normally insufficient he gave certain reasons for his entry of the vacating order. He indicated that the answer departed from the requirements of pleading and that the third defense does not in its present form assert a counterclaim against plaintiffs. We make no comment whatever as to the correctness of the trial court's opinion on this, a subject upon which Evans' counsel has stated he had no opportunity to be heard; but this is a matter for determination by the court after hearing. We do, however, agree with the trial judge in his finding that there was offered no proof upon which the final judgment could have been rendered. Neither the answer nor the counterclaim was verified by oath. The sworn application for the default and judgment recited, essentially, procedural matters; there was no oral, written, documentary, or other proof before the trial court to support the allegations of the counterclaim. We have set out in some detail the third defense incorporated as a counterclaim in order to show the averments upon which the judgment was entered. It is to be observed that the claim asserted is not upon a contract for payment of money, oral or written, but rather, it appears to be predicated on assertions of fraud, deceit, and false representations, with one prayer for a money judgment against plaintiffs, one for a declaratory decree adjudicating as null and void Evans' endorsement on the promissory note, in effect a cancellation and recission, and one seeking a further declaratory decree adjudicating that the transaction between the plaintiffs and Empire be declared as null and void. The subject matter of the last named prayer is not involved here.
The trial court in its vacating order said:
"The Court, through inadvertency, improperly entered the default and judgment as aforesaid. The applications were made to the Court during an ex parte period, and the Court did not, as he should have, examine all the pleadings and exhibits contained in the court file to fully apprise himself of the nature of the matters then pending. The Court is of the opinion that a gross injustice will result if its `final judgment' and default were allowed to stand."
We have carefully considered all the contentions advanced. We are in accord with the trial judge's conclusion that the default and final judgment should be set aside although our view in agreeing with this result has been primarily upon a different premise. We are convinced that the situation here is one of mistake and misunderstanding between counsel for the parties. Even if it were assumed there was any neglect, this must be deemed as inadvertent and excusable.
The petition for writ of certiorari is denied.
SMITH, C.J., and SHANNON, J., concur.
NOTES
[1] Empire, not a party to this certiorari proceeding, on November 1 and November 5, respectively, filed motions to dismiss the amended complaint of plaintiffs and the cross-claim of Evans.
[2] "Gentlemen:

"On August 9 we filed in this cause the answer of Luther J. Evans consisting of several defenses, together with a counterclaim against the plaintiff (sic) and a cross claim against the corporate defendant. Service was had by mail on August 9.
"A couple of weeks ago Mr. Boyce telephoned and asked for additional time in which to file responsive pleadings. This I was glad to give to him. Almost six weeks have expired since the filing of our pleading and as yet no responsive pleadings have been filed by either the plaintiff or the corporate defendant.
"I am leaving this weekend for a thirty-day northern vacation and will not return to the state until the latter part of October. Hence, if you need additional time to file your responsive pleadings, it is satisfactory to me.
"I hope you will be good enough to allow the case to remain in abeyance until my return, for there is no one in our firm who is even slightly familiar with the case.
 "Very truly yours,
 "Carl A. Hiaasen"
* * * * *
[3] "2. That prior to the due date of an answer or reply to defendant, LUTHER J. EVANS' counterclaim, a telephone conversation between CARL A. HIAASEN, counsel for said EVANS, and EARL R. BOYCE, counsel for plaintiffs, transpired, at which time Mr. Hiaasen agreed to an indefinite extension of time to plaintiffs in which to file responsive pleadings to said counterclaim.

* * * * *
"4. That during the telephone conversation between Mr. Hiaasen and Mr. Boyce, mentioned in paragraph 2 hereof, the order of August 7, 1962, was discussed between them and it was agreed that the time for filing any papers in this action was in doubt, and that neither Mr. Boyce nor Mr. Hiaasen fully understood the consequences of said order with respect to the proper time for pleading. Mr. Hiaasen further informed Mr. Boyce at that time that he had no interest in pressing the proceedings and advised Mr. Boyce that he might have all of the time he desired in which to file any responsive pleadings.
* * * * *
"7. Mr. Boyce, due to the number of plaintiffs in the case and the fact that some of the plaintiffs had retained separate counsel, was in the process of consultation and gathering evidence necessary prior to filing responsive pleadings to the counterclaim against the plaintiffs and, relying on the telephone conversations with Mr. Hiaasen and upon Mr. Hiaasen's letter of September 19, 1962, assumed he had all necessary additional time needed for this purpose, or at least such time as might elapse until Mr. Hiaasen should advise to the contrary. Mr. Boyce received no communication from Mr. Hiaasen subsequent to September 19, 1962 until he was in receipt on December 3, 1962 of a copy of the affidavit of service, application of LUTHER J. EVANS for a default judgment against the plaintiffs on said defendant's counterclaim, a copy of the default, and a copy of the final judgment upon the entry of a default.
"8. By reason of the foregoing facts, movant respectfully shows unto the Court that Mr. Hiaasen should, prior to seeking the ex parte entry by this Court of a default and a default judgment on the counterclaim, have contacted the attorneys for the plaintiffs terminating the open-end extension of time, and requesting the immediate filing of pleadings on behalf of the plaintiffs addressed to the counterclaim, or, at least should have advised the Court of the facts before asking the entry of a default and of a default judgment.
"9. That the entry of any default judgment upon said counterclaim is and was premature and improper in that
"a. The counterclaim fails to state a cause of action.
"b. The counterclaim is in effect merely a repetition of the Third Defense of said EVANS, as to which this cause is at issue, or will be at issue when the pending motion to dismiss the amended complaint of the defendant, EMPIRE INDUSTRIES, INC., is adjudicated.
"c. To the extent such counterclaim and the default judgment therein concerns a money judgment for $50,000.00, no proper proof has ever been submitted to this Court, and movant is entitled to notice of such presentation, the same being an unliquidated claim.
"d. To the extent such counterclaim and the default judgment therein covers Declaratory Relief under Chapter 87, Florida Statutes, the same is not a proper or permissible counterclaim to an action at law.
"10. Movant has a good and proper defense to said counterclaim."
Note: Omitted from the above quotation are the introductory, paragraph 1 which showed filing of Evans' answer and counterclaim, paragraph 3 concerning the continuance ordered by the court, paragraph 5 averring the September 19 letter and quoting the third paragraph of it, paragraph 6 showing Empire's motions to dismiss, the prayer, and counsel's oath to the motion. Also not shown is insertion in paragraph 2 of the handwritten word "indefinite" initialed "ERB" and one in paragraph 4, similarly initialed, "between them".
[4] "(c) SETTING ASIDE DEFAULT. For good cause shown the court may set aside an entry of default and, if a judgment by default has been entered, may likewise set it aside in accordance with Rule 60(b)."
[5] "The court may, for good cause shown upon any default for want of appearance or plea, set aside such default, and allow the defendant to demur or plead within a period of time to be fixed by the said court; but the application therefor must be made within sixty days from the time of the entry of such default, unless a term of the court shall in the meantime be held, when such application must be made during such term."
[6] Waterson v. Seat and Crawford, 10 Fla. 326.
[7] "(c) Unaffected by Expiration of Term. The period of time provided for the doing of any act or the taking of any proceeding shall not be affected or limited by the continued existence or expiration of a term of court. The continued existence or expiration of a term of court in no way affects the power of a court to do any act or take any proceeding in any civil action which is and has been pending before it."