403 So.2d 502 (1981)
COUNTY NATIONAL BANK OF NORTH MIAMI BEACH, Appellant,
v.
SHERIDAN, INC., a Foreign Corporation, and William H. Blacker, Appellee.
No. 80-1690.
District Court of Appeal of Florida, Fourth District.
August 26, 1981.
Craig D. Savage of Mamber, Epstein & Savage, North Miami Beach, for appellant.
Stephen J. McDonald of Hodges, Gossett, McDonald & Gossett, P.A., Hollywood, for appellee Sheridan, Inc.
ANSTEAD, Judge.
This is an appeal from an order denying appellant's motion to vacate a final judgment entered upon a default. At issue is whether the default should have been set aside.
The facts are not in dispute. In 1977, Sheridan, Inc. obtained a final summary judgment against William H. Blacker in the amount of $2,873.36. On May 6, 1980, Sheridan filed a motion for the issuance of a writ of garnishment after judgment, seeking to levy upon funds maintained by Blacker in a bank account at County National *503 Bank of North Miami Beach. The writ issued and was served on the Bank on May 15, 1980; however, the Bank failed to appear or serve an answer. A default was entered against the Bank on June 10, 1980 and a final judgment in garnishment was entered on June 18, 1980 in the full amount of the Blacker judgment, $2,873.76.
The Bank received a copy of the judgment on June 23, 1980, and on June 30, 1980, served a sworn motion to set aside the final judgment in garnishment along with supporting affidavits and exhibits, and an answer. The motion and answer averred that the Bank had a meritorious defense to the writ with regard to any funds in excess of $274.09, since that was the balance in Blacker's account at the time the writ of garnishment was served, and further alleged that its failure to respond to the writ was caused by mistake and excusable neglect. The affidavits and exhibits attached to the motion revealed that the Bank, after receiving service on May 15th, immediately transferred Mr. Blacker's funds in the amount of $274.09 then on hand into a garnishment escrow fund and notified the office of the Bank's attorney of the proceedings the next day. On May 19th or 20th, the secretary of 20 years to the Bank's attorney picked up the writ shortly before lunch and temporarily placed it into an unlabeled file until she could prepare a new file upon her return from lunch. However, during lunch the secretary became ill; her illness prevented her from returning to work until May 27th, when she became involved in preparing for a complicated real estate closing and forgot to open a file and calendar the garnishment papers. The Bank's attorney did not actually learn of the writ until June 23, 1980, when a copy of the final judgment was received.
We must first observe that we believe the case law on the subject of vacating default judgments appears to be in a state of hopeless confusion. In the first instance trial courts are advised that they should follow a policy of liberality in exercising their discretion to vacate default judgments. On the other hand appellate courts are advised that they must find a gross abuse of discretion by the trial court before disturbing its ruling on a motion to vacate. Both of these principles are set out in the case of North Shore Hospital, Inc. v. Barber, 143 So.2d 849 (Fla. 1962), the case most frequently cited in subsequent appellate opinions on this subject. Most appellate courts are naturally reluctant to announce that a trial court has "grossly" abused its discretion even though it may be clear that the trial court did not apply a policy of "liberality" in considering the motion to vacate. Hence, there is a great deal of straining apparent in appellate opinions holding that the trial court erred in refusing to set aside a default. Our views are not unlike those expressed by Judge Ott in the case of Garcia Insurance Agency, Inc. v. Diaz, 351 So.2d 1137 (Fla. 2d DCA 1977) although we are not as certain as he that the seemingly competing concepts of "liberality" and "gross abuse of discretion" are always consistent with sound decision making in this area.
Initially, we must review the trial court's action to determine if the appropriate standard for determining motions to vacate default judgments was followed. In Clark v. Roberto's, Inc., 320 So.2d 870 (Fla. 4th DCA 1975), we held that a defendant is entitled to relief from a default if he can demonstrate that his neglect to respond was excusable and that he had a meritorious defense:
It has long been the policy of the courts in this state to liberally set aside defaults for failure of a defendant to plead so as to allow a determination of the controversy on the merits when the defendant demonstrates that his neglect was excusable and that he has a meritorious defense... . However, the absence of either of these elements will defeat an attempt to set aside a default.
At 871.
Later cases suggest a third element should be considered, that of due diligence on the part of the defendant in seeking relief upon learning of the default. Garcia Insurance Agency, Inc. v. Diaz, supra.
*504 It is undisputed here that the Bank has a meritorious defense since it has established by sworn affidavit that the judgment debtor Blacker had only $274.09 in the bank at the time the writ of garnishment was served, whereas the amount sought to be collected and for which a garnishment judgment was entered was $2,873.76.
The issue of mistake or excusable neglect is not as easy. It is undisputed that the mistake and neglect was principally that of the secretary for the Bank's attorney. She failed to set up a file and calendar the garnishment proceedings for a proper response. Her excuse was that she was ill. That too is undisputed. Under all the circumstances presented we believe the Bank's neglect in failing to respond was excusable. In Travelers Insurance Co. v. Bryson, 341 So.2d 1013 (Fla. 4th DCA 1977), we held that an attorney's failure to appear at a hearing because of an error on his calendar constituted excusable neglect. In other cases, clerical or secretarial error has also been held to constitute excusable neglect. Associated Medical Institutions, Inc. v. Imperatori, 338 So.2d 74 (Fla. 3d DCA 1976); North Shore Hospital, Inc. v. Barber, supra; Stevens-Davis Co. v. Stock, 141 Fla. 714, 193 So. 745 (1940); Sterling Drug, Inc. v. Wright, 342 So.2d 503 (Fla. 1977). Of course, each of these cases turn upon its own complete set of facts, but we believe they adequately demonstrate the point that an unintentional mistake such as the one involved herein may be excused where no substantial prejudice to the plaintiff has resulted. As to prejudice, we note that upon receipt of the garnishment writ, the Bank immediately set aside the funds in the judgment debtor's account, and those funds remained available for collection throughout the proceedings below. In addition, there is no indication that the plaintiff lost any opportunity to collect its judgment against the debtor because of the delay caused by the Bank's mistake in failing to timely respond to the garnishment writ.
As to due diligence in responding once the mistake was discovered, the record reflects that the Bank was served with the default judgment on June 23, 1980, and on June 30, 1980, a verified motion to set aside the judgment was filed along with detailed affidavits and exhibits setting out completely the events that led up to the entry of default. Had the Bank timely responded to the garnishment writ initially, the plaintiff would no doubt have been entitled to a judgment on the pleadings or summary judgment in the sum of $274.09 on or about June 5, 1980. In all likelihood, it would have taken some further time to actually secure such a judgment by a motion and hearing thereon. As it was, the Bank served its motion to vacate the default on June 30, 1980. It is clear that there was no substantial delay in the prosecution of the garnishment proceedings or attendant prejudice to the plaintiff. Under the circumstances we believe the appellant has demonstrated due diligence.[1]Garcia Insurance Agency, Inc. v. Diaz, supra. Of course, the plaintiff may be deprived of recovering the entire judgment from this garnishee, who didn't have funds of the debtor's on hand in the first place to cover the entire judgment. But, we do not believe that is the kind of prejudice that the plaintiff may show as a bar to the default being set aside. Otherwise, virtually no defaults would be subject to judicial excision since such is the initial result of vacating a default judgment in every case.
Finally, we would like to reaffirm the policy of the courts of this state to liberally set aside defaults under the standards set out by the Supreme Court in North Shore Hospital, Inc. v. Barber, supra, wherein that court observed toward the end of its opinion:
In the Waterson case, the defendant had moved to set aside a default decree entered against him, asserting by affidavit that he had placed the complaint in *505 the hands of his attorneys, who, for reasons unknown to him, never filed an answer. The Circuit Court denied the motion and this court reversed, holding that the defendant was not guilty of culpable negligence. In a headnote by the court, the following rule was laid down:
"Whether a default should be opened, must depend on all the facts and circumstances connected with the case. If the party be guilty of gross negligence, the default will not be opened." (Emphasis supplied.)
The court also stated that "* * * it is the tendency of the courts of the present age to stand less upon strict rules of practice than formerly, and to keep the door a long time open to a defendant who seems to be honestly striving to get in what he believes to be a good defense." Those lines were penned in 1853. When they are compared with the decision of the District Court herein, it gives cause to wonder how much progress we have made in the last hundred years toward liberalizing rules of procedure so as to achieve substantial justice.
At 853 to 854.
In short, we believe the main lesson to be learned from the Barber decision is that the rules of procedure should be construed liberally, at least in regard to vacating defaults, to achieve substantial justice in the case.
Accordingly, having concluded that the trial court erred in failing to grant the motion to set aside the default judgment, we reverse and remand this cause for further proceedings consistent herewith.
HERSEY and HURLEY, JJ., concur.
NOTES
[1] Unlike the defaulted parties involved in two other recently decided cases out of this court. See Kar Kare Owners Group of Florida v. Chason, 356 So.2d 851 (Fla. 4th DCA 1978) and Westinghouse Credit Corporation v. Steven Lake Masonry, Inc., 356 So.2d 1329 (Fla. 4th DCA 1978).