PER CURIAM.
A defendant appeals an order denying his motion to vacate a clerk’s default against him. Because we conclude that defendant has failed to demonstrate an abuse of discretion, we affirm.
This is not a case of a defendant who has been served with process merely turning over suit papers to a lawyer who then failed to file a response before a default was entered. Defendant was the CEO and a director of Mediforce, Inc., and its subsidiary, General Environmental Technologies. Aso involved in the corporations as an officer and director was a lawyer named Chillingsworth who with his law partner, Conway, represented the corporations in various lawsuits. In fact, the corporate offices were located in the law offices of Chillingsworth and Conway (the lawyers). The lawyers had also represented defendant in various matters for several years including two other lawsuits that had been going on since 1997. During the period in the year preceding the events relating to the default against defendant in this case, *1198 three defaults had been entered against defendant in one of the other lawsuits while he was ostensibly being represented by Conway.
In December 1998 the lawyers advised defendant of a lawsuit by appellee against the corporations, Chillingsworth and defendant. Defendant actively participated with the lawyers in preparing defenses and strategy for this and all litigation at corporate meetings. As a result of his close involvement with litigation strategy and tactics, defendant stayed familiar with the status of the cases. He stated that he received copies of all papers filed in the lawsuit and that Conway knew where and how to reach him 24 hours a day.
On January 8, 1999, three events occurred almost simultaneously. Conway filed defenses in this lawsuit on behalf of the corporate defendants and Chillings-worth, but not on behalf of defendant, who had not yet been served. Chillingsworth resigned from the Florida Bar in lieu of disciplinary proceedings. And, on the same day, appellee filed a motion to disqualify the lawyers from representing the corporate defendants in this lawsuit because of conflicts of interest. Within two weeks after these events, defendant resigned from the corporations, stating that the lawyers had caused a substantial loss of money. Conway testified by affidavit that, on account of this “falling out”, she refused to represent defendant any longer. She stated without equivocation that: “As a result, it was understood that I would not represent him anymore in this case.”
After these events, defendant was served in this case on January 22nd. Conspicuously, he also admitted that he did not know whether he had received a copy of a response filed on his behalf. He claims that Conway deliberately failed to respond on his behalf, allowing a default against him, because he no longer wished to have any association in any capacity with Chillingsworth. Defendant did not call Conway to testify at the hearing on his motion for relief from the default and actually testified that he did not know of any reason why Conway would have been confused about the matter of representing him in this case.
After hearing his live testimony at the hearing on the motion to vacate default, the trial judge said:
“First of all its evident that [defendant] is a sophisticated businessman and that he has some experience with litigation and that it’s undisputed that he was certainly well aware of the pendency of this lawsuit. In fact before any lawsuit was filed, he began to assist in the preparation of a defense, and his testimony is that he was closely involved with even the preparation of the pleadings on behalf of the other defendants. And then, as you say, he kind of fell off the face of the earth.
“It’s interesting what’s going along during that period. He left on January 20th, and he testifies that his reason for leaving is because [Chillingsworth is] about to get disbarred, and around that same time we’re having the disqualification of counsel. We heard of a falling out, some kind of friction that developed.
“And it seems to me that diligence requires that of a litigant in that time to be especially diligent as to the status of a case after having been served as to the status of the pleadings. What’s going on? Are you going to represent me? Are you doing it? Have you filed the answer? And that did not take place here. So I’m going to deny the motion to set aside the default.”
Certainly from the trial judge’s resolution of the evidence, we cannot say that no reasonable trial judge would have ruled against his motion. As the trial judge found, defendant was familiar with litigation and even participated in preparing pleadings in this case before he was actually served. But his testimony also shows that from the time he gave the suit papers to the attorney, who he claims he “understood” would represent him, he never in *1199 quired of them whether a response had been filed on his behalf.
At the conclusion of the hearing, the party opposing default relief in this case argued:
“the rule regarding vacatur is intended to be liberal but not all-encompassing. This is not absolution simply from confessing sins. There’s a test that has to be met. They haven’t met it.”
The trial judge heard much about the principle of liberality in default relief from appellant’s lawyers. Being quite aware of the principle guiding his discretion, he nevertheless found that defendant had failed to show that his understanding of representation by his former corporation’s lawyers was reasonable and excusable in light of the totality of circumstances.[1] See Kar Kare Owners Group of Florida, Ltd. v. Chason, 356 So.2d 851, 854 (Fla. 4th DCA 1978) (cannot say that trial judge abused discretion in failing to find party’s excuses for failing to respond to be acceptable under total circumstances of case). Defendant has not shown that the trial judge abused his discretion.
AFFIRMED.
STONE and FARMER, JJ., concur.
FARMER, J., also concurs specially with opinion.
TAYLOR, J., dissents with opinion.

. The trial judge was not bothered by the informality followed by the corporate officials and its counsel as to the matters handled by counsel in regard to the representation of defendant in regard to this and other litigation arising from his former association with the corporation as CEO. We note that many occasions of legal representation are set about on nods or gestures, on “understandings” that are verbalized, if at all, only imperfectly and indirectly. In this instance, however, the trial judge simply found that one man’s understanding was unsupported by his own testimony.