FARMER, J.,
concurring specially.
The issue in this appeal is that old friend of the appellate courts in Florida — whether a trial judge grossly abused discretion in vacating or refusing to vacate a default. As Justice (then Judge) Anstead once wrote on this subject:
“the case law ... appears to be in a state of hopeless confusion. In the first instance trial courts are advised that they should follow a policy of liberality in exercising their discretion to vacate default judgments. On the other hand appellate courts are advised that they must find a gross abuse of discretion by the trial court before disturbing its ruling on a motion to vacate.... Hence, there is a great deal of straining apparent in appellate opinions holding that the trial court erred in refusing to set aside a default.”
County Nat’l Bank of North Miami Beach v. Sheridan, Inc., 403 So.2d 502, 503 (Fla. 4th DCA 1981). While I am borrowing from one-time colleagues, I should not omit the perceptive observation of Judge Letts that “[t]he problem presented is a veritable mine field for trial judges, for it appears that whatever they do, the appellate court reverses.” Westinghouse Credit Corp. v. Steven Lake Masonry, Inc., 356 So.2d 1329, 1330 (Fla. 4th DCA 1978).
The dissent’s preference for the policy of liberality in vacating defaults runs smack up against an even older legal principle that a trial judge’s resolution of disputed facts — especially those turning on the demeanor and credibility of a witness — is controlling on appeal. Because this trial judge did not merely accept the affidavits of the party seeking relief from the default and instead heard his live testimony, we are necessarily required to take the established facts as those gleaned from determinations of credibility and the like. The trial judge found from Ray’s testimony that the circumstances did not reasonably support Ray’s private “understanding” that counsel for the corporation would represent him, that such a belief was unreasonable and inexcusable. Thus a reversal would necessarily send our trial judge *1200 reeling backwards to the solace of Judge Letts’s commiseration that judges are “damned-if-you-do-damned-if-you-don’t.” For myself, I simply cannot agree that the trial court abused his discretion simply because he failed to give sufficient weight to the policy of liberality in vacating defaults. He certainly considered the policy but thought it not controlling in this case. He viewed the evidence as failing to demonstrate reasonable diligence and a good reason for relying on someone else to respond for the defendant.
Having said that, I wish to make it clear that I disagree with the argument that, because this case involves a default rather than a default judgment, we are required to review the order with “greater circumspection.” For one thing, I do not understand what “greater circumspection” means. As a suggested standard of review, it lacks meaningful guidance. It fails to provide an unmistakable direction to go in, and fails to suggest how far in any direction should be appropriate. By its nature, appellate review already involves significant circumspection — even great circumspection, at that. Appellate judges should always be “heedful of circumstances and potential consequences.”[2] Heedful is what we do. Circumspect is our role. These are our institutional raison d’etre.
Frankly I do not understand why we should be any more circumspect in reviewing orders on motions to vacate defaults before final judgment than we should be after a final judgment has been entered— or, for that matter, upon review of any other order or judgment we see. Both before and after judgment, the same body of principles for relief from defaults is in play: the trial judge should favor trials on the merits over defaults, and a reviewing court should ask on appeal whether the trial judge has greatly abused that discretion. There is absolutely no reason why we should be more alert as to the circumstances and consequences in default relief than, say, whether to impose sanctions for discovery abuse or any discretionary ruling.
Appellant’s assertion of greater circumspection arises from a misreading of North Shore Hosp., Inc. v. Barber, 143 So.2d 849 (Fla.1962). With all respect to the line of cases from the Second District, see Hunt Exterminating Co., Inc. v. Crum, 598 So.2d 113 (Fla. 2d DCA 1992), Ponderosa, Inc. v. Stephens, 539 So.2d 1162 (Fla. 2d DCA 1989); Finkel Outdoor Prods., Inc. v. Lasky, 529 So.2d 317 (Fla. 2d DCA 1988), which originated this proposition, Barber simply does not support such a conclusion, not even indirectly. This misreading arises from the following part of Barber:
“At this juncture, it is well to point out that we are not concerned here with the power of a trial court to vacate a default following final judgment. As pointed out previously, final judgment was not entered on the default in this case. We are faced only with the setting aside by the trial court of its interlocutory order of default.... As the District Court held, it is well settled that a trial court has the inherent authority to control its own interlocutory orders prior to final judgment.”
143 So.2d at 851. These remarks have nothing to do with any current principles for default relief in the trial courts or, for that matter, any standard of review for orders involving relief from defaults before or after judgment. Instead they were concerned with the former principles for vacating defaults in 1962 when the supreme court decided Barber.
Before the adoption of rules 1.500 and 1.540 in 1967 (five years after Barber was decided), relief from defaults was governed by an amalgam of provisions from the earlier 1954 Rules of Civil Procedure. As the drafters of the 1967 change explained:
“Rule 1.500 is a new default rule adopted from Federal Rule 55 in part applying to cases in both law and equity. It replaces former Rules 2.9, S.9, S.10 *1201 and 3.11, 1954 Rules of Civil Procedure ....
“Unlike former Rule 2.9 which did not provide for setting aside defaults at law as existed in equity under former Rule 3.10, the new rule specifically authorizes the court to set aside defaults. Moreover, it authorizes setting aside a final judgment entered thereon in accordance with Rule 1.54.0(b). Thus, the distinction between legal procedure and equity procedure is abolished, and the rule adheres to the policy of liberality alluded to by the Supreme Court of Florida in [Barber], as well as to the policy of the repealed statute providing for the vacating of defaults in proper cases.” [e.s.]
30A Fla. Stat. Ann. 369-370 Authors’ Comment-1967 (West 1985). Until the adoption of rules 1.500 and 1.540 in 1967, the principles for vacating defaults were dissimilar depending on whether relief was sought before judgment rather than afterward.
After the entry of a final judgment and especially after the ending of the Term in which the judgment was entered, a trial judge’s discretion to grant default relief was formerly curtailed significantly. See Alabama Hotel Co. v. J.L. Mott Iron Works, 86 Fla. 608, 98 So. 825 (1924) (after term of court has ended, unless steps are taken during term to correct them, all final judgments of court pass beyond its control; errors can be corrected only by the appellate court), cited in Barber. Any distinction between default relief before judgment and afterwards, however, was entirely eliminated by rule 1.500(d).[3]
Indeed to draw a distinction today between defaults vacated before judgment and those following judgment, for purposes of the current standard of review, is a strange predilection for appellate judges. Nonfinal review is a less-favored mode of appellate review. As rule 9.130 makes abundantly clear, the failure to utilize a right of nonfinal review is entirely irrelevant to waiting for plenary review after the entry of final judgment. See Fla. R. App.P. 9.130(g) (“This rule shall not preclude initial review of a non-final order on appeal from the final order in the cause.”).
Truth be told, the principles are now the same for cases involving relief from a default. There is not a single case since the adoption of rule 1.500 holding that an order vacating a default after final judgment would be affirmed even though it would have been reversed if the issue had reached the appellate court before the final judgment had been entered. Moreover there is no reason for such a double standard of review. If a trial judge has grossly abused judicial discretion in vacating a default before judgment, surely the effects of that abuse would persist into the entry of a consequent final judgment.
I also disagree with the two-tiered standard of review that this court has recently added to review on this subject. See George v. Radcliffe, 753 So.2d 573 (Fla. 4th DCA 2000) (holding that there are two standards in review of orders on motions to vacate defaults: simple abuse of discretion for orders denying relief, and gross abuse of discretion for orders granting relief). We explained our rationale thus:
“That principle, although not articulated in North Shore, is consistent with Florida’s liberal policy in favor of vacating defaults so that controversies can be decided on the merits. Given that policy, it makes sense to use abuse of discretion, not gross abuse, as the standard of review, when the trial court has denied a motion to vacate.” [c.o.]
Id. at 575.
Appellant raises this two-tiered standard in this case and argues that because the trial court denied relief we should apply the lesser standard of simple abuse rather than gross abuse; and he seems to be *1202 saying that the standard of simple abuse should nearly always result in a reversal of a denial of relief when one considers that there is a policy of liberality in granting such relief. I disagree with this argument. It is contrary to Barber as evidenced by the following passage:
“The second point in direct conflict with prior decisions of this court is the holding by the District Court that a mere abuse of the trial judge’s discretion is a sufficient basis for reversal of his ruling on the motion to vacate. In Coggin v. Barfield, 150 Fla. 551, 8 So.2d 9, and Coggin v. Morris, 150 Fla. 555, 8 So.2d 11, which were by implication relied on by the District Court as well as in Benedict v. W.T. Hadlow Co., 52 Fla. 188, 42 So. 239, this court held that a showing of gross abuse of a trial court’s discretion is necessary on appeal to justify reversal of the lower court’s ruling on a motion to vacate .... [T]he District Court departed from established law and attributed to our prior decisions erroneous principles of law so as to create a direct conflict.” [e.s.]
143 So.2d at 852. Barber’s holding on the standard of review is not based on the nature of the trial court decision on the motion to vacate. Indeed it is set in categorical terms pertaining to all motions to vacate defaults, regardless of the outcome. Moreover, the same court that expressly decided that the standard on review is gross abuse of discretion also made clear in the very next part of the opinion its dedication to the policy in the trial courts of liberality in granting relief from defaults. Consequently both George and today’s decision are in conflict with Barber.
Properly understood, the principle of liberality and the standard of gross abuse of discretion are not at war with each other. They can be reconciled without adopting multiple standards of review, depending on how the trial court rules on the issue of default relief. The liberality principle is directed to trial judges as a rule guiding their discretion, not to appellate judges as a standard of review. It directs the trial judge to grant the relief when the circumstances do not point clearly in one direction and the issue is in doubt. After the trial judge makes the decision, however, and the issue is raised on appeal, a court of appeal is directed not to apply the liberality principle itself (for the trial judge has already done that or failed to do so) but instead to review the decision granting or denying the relief from the standpoint of gross abuse of discretion.
One way to abuse discretion would be to routinely grant relief and vacate defaults, even though the defaulting party had no reason for failing to respond, or had exercised no diligence in attempting to clear the matter up, or had no defense anyway. From the opposing perspective, another way would be to deny relief without assessing whether the party was negligent at all, or whether any neglect was excusable, and whether the party was diligent in seeking to clear the matter up. In either of these circumstances, discretion would be abused because the trial judge had chosen or eliminated alternatives that the law does not allow or that it requires to be considered.
The abuse of discretion test (whether simple or gross) was not intended itself to specify how the discretion should have been exercised in the first instance. Instead it merely suggests a mode of analysis on review after the decision has already been made. The nature of the discretion to be exercised suggests the possible ways of abusing it. The liberality principle in default relief merely provides a trial judge with a legal tie-breaker: if the facts for and against default relief are in balance and do not rather plainly point to one result, then as a matter of law the default should be relieved. But the mere fact that a judge has denied such relief does not at all mean that discretion has been grossly abused.
Shifting standards of review depending on the nature of the how the trial judge decided the issue are themselves exceed *1203 ingly undesirable. As Justice Breyer rather recently explained:
“it is undesirable to make the law more complicated by proliferating review standards without good reasons. More importantly, the reviewing attitude that a court of appeals takes toward a [trial] court decision should depend upon ‘the respective institutional advantages of trial and appellate courts,’ not upon what standard of review will more likely produce a particular substantive result.” [e.s., c.o.]
First Options of Chicago v. Kaplan, 514 U.S. 938, 948-949, 115 S.Ct. 1920, 131 L.Ed.2d 985 (1995).
Justice Breyer’s comments connect the standard of review to the “the respective institutional advantages of trial and appellate courts.” These respective institutional advantages were, in turn, explained in Salve Regina College v. Russell, 499 U.S. 225, 231-32, 111 S.Ct. 1217, 113 L.Ed.2d 190 (1991), where the Court said:
“Independent appellate review of legal issues best serves the dual goals of doctrinal coherence and economy of judicial administration. [Trial] judges preside alone over fast-paced trials: Of necessity they devote much of their energy and resources to hearing witnesses and reviewing evidence. Similarly, the logistical burdens of trial advocacy limit the extent to which trial counsel is able to supplement the [trial] judge’s legal research with memoranda and briefs. Thus, trial judges often must resolve complicated legal questions without benefit of ‘extended reflection [or] extensive information.’
“[Appellate courts], on the other hand, are structurally suited to the collaborative juridical process that promotes deci-sional accuracy. With the record having been constructed below and settled for purposes of the appeal,, appellate judges are able to devote their primary attention to legal issues. As questions of law become the focus of appellate review, it can be expected that the parties’ briefs will be refined to bring to bear on the legal issues more information and more comprehensive analysis than was provided for the district judge. Perhaps most important, courts of appeals employ multijudge panels ... that permit reflective dialogue and collective judgment.”
In the instance we face today, there is absolutely nothing in the relative institutional advantages of trial court decisions on default relief — whether for or against it in a given case — over appellate decisions that requires shifting standards of review depending on whether the default was set aside or not.
Equally important, the notion of preferring trials to defaults, i.e., liberally vacating defaults, does not mean that all motions to vacate a default must inevitably be granted. We quite rightly insist, for example, that motions to vacate defaults show a legal excuse for failing to respond to the lawsuit timely, due diligence in going about responding, and a meritorious defense as conditions for relief. See, e.g., Schwartz v. Business Cards Tomorrow, Inc., 644 So.2d 611 (Fla. 4th DCA 1994) (in order to obtain relief under rule .1.540 from default judgment, party must demonstrate excusable neglect in failing to respond, meritorious defense, and due diligence in seeking relief); and 31 Fla. Stat. Ann. 120 Authors’ Comment — 1967 (West 1985) (“The power of the court is discretionary and a party has no absolute right to invoke it. It is incumbent upon the moving party to show the existence of adequate grounds to justify the exercise of such power.”). Similarly, if a trial judge announced a policy of liberally entering defaults and then vacating them only with great reluctance, on review we would properly cite the contrary policy established by our supreme court in Barber and remand for a new exercise of discretion in light of the appropriate legal principles.
It ill becomes our mien of impartiality to have a lenient standard of review for one outcome and a stricter one for another. To do so is to set a thumb on the scales of *1204 appellate justice, tilting them for or against one side or the other. It replaces “reflective dialogue and collective judgment” with a one-sided “principle” hinting that denials of default relief should always be reversed and grants always affirmed.
Appellant asks us once again, under the guise of the alternative standard of simple abuse of discretion, to substitute on review the trial court principle of liberality instead of applying Barber. Recently in Integrated Transaction Services, Inc. v. Bahama Sun-N-Fun Travel, Inc., No. 4D99-1046, - So.2d -, 2000 WL 173955 (Fla. 4th DCA Feb.16, 2000), we did exactly that and thereby reversed a denial of default relief on conflicting facts. I am quite certain, as I have indicated, that one can find any number of decisions in which a Florida appellate court has done the same thing.[4] As appellate judges, however, we must always remind ourselves that the discretion to vacate defaults is reposed in trial judges, not with us. The applicable principle of appellate review of their exercise of discretion is, as Barber expressly states, one of a gross abuse of discretion. We should not disturb a trial judge’s decision, whether it be to grant or deny relief, unless there is an abuse of discretion and it is marked and extreme.
I therefore concur in the affirmance.

. See American Heritage Dictionary 347 (3rd ed.1992).

. See Fla.R.Civ.P. 1.500(d) (“The court may set aside a default, and if a final judgment consequent thereon has been entered, the court may set it aside in accordance with rule 1.540(b).”).

. Many decisions upholding such denials are buried in PCAs, although there are also some in published decisions.