841 So.2d 593 (2003)
Sheila M. KING-COLEMAN, Appellant,
v.
Larry J. GEATHERS, Appellee.
No. 4D02-3194.
District Court of Appeal of Florida, Fourth District.
April 2, 2003.
*594 Jack A. Fleischman of Fleischman & Fleischman, P.A., West Palm Beach, for appellant.
R. Stephen Ottewell of Law Office of R. Stephen Ottewell, P.A., Boca Raton, for appellee.
OWEN, WILLIAM C., JR., Senior Judge.
Appellant, the former wife, seeks review of a non-final order denying her motion to vacate a post-dissolution monetary judgment entered in favor of appellee, the former husband. We affirm.
Previously, appellee had obtained a substantially identical judgment against appellant but, on appeal, the judgment was reversed and the case remanded for a new trial. See King-Coleman v. Geathers, 795 So.2d 1092 (Fla. 4th DCA 2001). Upon remand, a non-jury trial was scheduled for March 28, 2002, with due notice to appellant's attorney. The trial, which appellant did not attend, again resulted in a monetary judgment in favor of appellee. Appellant filed a motion to vacate the judgment pursuant to Rule 1.540, Florida Rules of Civil Procedure, on the grounds that her failure to appear at the trial was due to excusable neglect, inadvertence and surprise, in that she did not receive notice. Following an evidentiary hearing on the motion, at which appellant appeared and testified, the court denied her motion to vacate. That order is the subject of this non-final appeal.
The relevant facts are neither complex nor in material dispute. Appellant, a Lt. Colonel in the United States Air Force, was stationed in Europe in December 1999. After she had been served with her former husband's petition, she retained Steven Cripps, Esq., to represent her in that matter. She remained in contact with Mr. Cripps until she returned to the United States in September 2000.[1] For whatever reason, from that time on she never again contacted Mr. Cripps, either to ascertain the status of the pending appeal or to advise him of how or where he could contact her.
The mandate in the prior appeal was issued in October 2001, nearly thirteen months after appellant had returned to the States. At that time the only addresses for appellant which Mr. Cripps had were her previous military address while she was stationed in Europe and the Maryland *595 residence of her former baby-sitter where she visited from time to time and occasionally stayed while on leave.[2] At the court's request, Mr. Cripps then obtained, through military channels, appellant's mailing address at the Pentagon. Notices of the March 28, 2002 trial date were mailed to appellant at both the Pentagon and the address of the baby-sitter; however, she denied receiving either.
The trial court found that although it could not conclude whether appellant received actual notice of the trial date, a finding on that issue was not necessary to its decision on the motion. Appellant's attorney had notice and if, as appellant testified, she did not receive actual notice, it was due entirely to her own fault, i.e., her failure, during the eighteen months between September 2000 and March 2002, to advise her attorney, Mr. Cripps, of how or where to contact her. Consequently, the court found that appellant had not shown that any lack of notice of the hearing was due to mistake, inadvertence, surprise or excusable neglect as contemplated by rule 1.540(b), Florida Rules of Civil Procedure.
The trial court did not abuse its discretion in denying appellant's motion to vacate. This case does not involve lack of notice of trial. Appellant's counsel had notice of the trial date and, as agent of the client, any notice by or to the attorney in the proceeding is notice to the client. See Fla. R. Jud. Admin. 2.060(m) ("In all matters concerning the prosecution or defense of any proceeding in the court, the attorney of record shall be the agent of the client, and any notice by or to the attorney or act by the attorney in the proceeding shall be accepted as the act of or notice to the client."). Furthermore, the court found that Mr. Cripps diligently exerted every effort to convey that notice to appellant. The fact that he was unsuccessful was due entirely to appellant's own fault and her inattention to her duty as a litigant to keep counsel informed of her current address. See W.K. v. Dept. of Children & Families, 832 So.2d 229, 232 (Fla. 5th DCA 2002); M.E. v. Florida Dept. of Children & Fam. Servs., 728 So.2d 367 (Fla. 3d DCA 1999).
Accordingly, the order denying appellant's motion to vacate is affirmed.
FARMER and KLEIN, JJ., concur.
FARMER, J., specially concurring.
I fully agree with the majority and write only to comment on the legal sufficiency of the grounds appellant presented in her motion for a new trial below.
Plaintiff was given notice of the trial date by formal notice to her counsel. Pointing to her absence from the trial, she sought a new trial essentially on the basis of mistake, inadvertence and excusable neglect. These grounds from rule 1.540(b) are, of course, identical to those for vacating a default. But as a basis for a new trial they are not, I think, adequate where the contention is based on a represented party's claimed lack of personal notice. The failure of a party to attend trial might be sufficient for a new trial where the absence is caused by events or occurrences beyond one's control, that is where the stars have placed unconquerable barriers in a party's path to the courthouse: war, accident, injury, disease or natural catastrophe. But I do not think that mere inadvertence, mistake or excusable neglect should be enough to get a second trial on account of an absence from the first trial that does not result from such cataclysmic factors.
*596 The trial date is the critical event in a civil case. Where the failure to attend trial is based on the absentee's claimed ignorance of the specific date, the grounds for ordinary default relief are not satisfactory as a basis for a new trial. Something more should be required. Otherwise the parties would be able to manipulate their way around the import of this decisive event and achieve delays and continuances rightly denied them. Appellant's rule 1.540(b) motion suggests no such reasons.
The motion implies that a default was actually entered when defendant failed to present herself at the scheduled trial. I must say, it would strike me curious if a plaintiff sought a default when a defendant fails to appear at trial after having been given, as here, legally sufficient notice of the trial date. Why a default when the claimant can have a judgment based on evidence? If I were the plaintiff in a case where the defendant failed to appear at trial, I would flee from any suggestion of a default as a lamb from a lion. Better by far to proceed with evidence.[3]
One advantage of bypassing the default route is to avoid the unpredictability of appellate review of default relief. See County Nat'l Bank of N. Miami Beach v. Sheridan, 403 So.2d 502, 503 (Fla. 4th DCA 1981) (law on default relief in "hopeless confusion"); Westinghouse Credit Corp. v. Steven Lake Masonry Inc., 356 So.2d 1329, 1330 (Fla. 4th DCA 1978) (noting that the problem facing trial judges is a "veritable minefield, for it appears that no matter what they do, the appellate court reverses."). Where the claimant produces his evidence and takes his chances with the judge rather than a default, he will not be saddled with our internal debate over the standard of review in default relief cases.[4]
But here the court faced essentially a question of law as to defendant's basis for a retrial under rule 1.540(b): must the *597 party come to actually know the trial date where the court has given notice to her counsel who is unable to communicate that fact to her? The trial judge correctly answered in the negative because the record shows that her ignorance of the trial date was caused by a persistent failure to stay in communication with her lawyer. The U.S. Army may have sent her to Europe, but she did not show that the military had thereby cut her off from the instruments of communication across the seas: mail, telephone, internet, and, I suppose (even still), the telegraph. The real issue raised by her request for a new trial is thus not one of defaultsof mistake, inadvertence or excusable neglect, the grounds of rule 1.540(b)but of agency and the liability of a principal. "The fault, dear Brutus, is not in our stars but in ourselves...."
I therefore fully concur in Judge Owen's opinion.
NOTES
[1] At that point in time, the prior judgment had been entered and the appeal, filed on appellant's behalf by Mr. Cripps, was pending.
[2] In fact, it was on the occasion of one such visit to the baby-sitter's residence the latter part of April 2002 that the appellant received a copy of the April 9, 2002 Final Judgment which had been mailed to that address by the court.
[3] I like my odds any day with an absent partywho objected to nothing, who offered no contrary evidence, who preserved no issue at trialstraining to upset a judgment on appeal without a transcript. To paraphrase what the first guy sings:

"I make it affirmed; now this is no bum steer. It's from a handicapper that's real sincere."
Frank Loesser, Fugue For Tinhorns, GUYS AND DOLLS (1950).
[4] See N. Shore Hosp. Inc. v. Barber, 143 So.2d 849 (Fla.1962) (showing of gross abuse of discretion necessary on appeal to justify reversal of trial court ruling on motion to vacate default); Sterling Drug Inc. v. Wright, 342 So.2d 503 (Fla.1977) (same). Although Barber says rather plainly that the standard for review in default relief is gross abuse of discretion, this court has misread the supreme court's opinion. Compare George v. Radcliffe, 753 So.2d 573 (Fla. 4th DCA 2000) (holding that because policy favors trials over defaults greater showing is required to reverse order vacating defaults than order denying relief from default), and Lloyd's Underwriters At London v. Ruby Inc., 801 So.2d 138 (Fla. 4th DCA 2001) (order denying motion to vacate default reviewed under abuse of discretion standard), with Barber; see also Emmer v. Brucato, 813 So.2d 264, 265 (Fla. 5th DCA 2002) (finding that gross abuse of discretion is standard for all decisions involving default relief); Merrill Lynch Mtg. Capital, Inc. v. Hallmark Indus., Inc., 627 So.2d 12 (Fla. 2d DCA 1993) (to reverse order on motion to vacate default gross abuse of discretion must be shown). In Ray v. Thomson-Kernaghan & Company, 761 So.2d 1197, 1199-1204 (Fla. 4th DCA 2000) (Farmer, J., concurring) (arguing that two-tiered standard for review of default relief used by panel in George v. Radcliffe conflicts with Barber), I explained why I think Barber is correctly read to prescribe gross abuse of discretion as the operative standard.

In my opinion default relief under Barber is almost entirely committed to the conscience of trial judges, not to appellate courts. The supreme court has prescribed this most forbearing standard of reviewan abuse of discretion that is not merely ordinary but partakes of something greaterbecause the reasons for relieving a party from a failure to follow civil procedures are ever shifting and circumstantial. Whether to relieve a default will be heavily affected by the vapors, airs and tones; attitudes, demeanor and credibility; of parties, witnesses and lawyersall of which are simply inaccessible to a cloistered appellate judiciary. Thus the court's requirement of gross abuse is, I think, its aphoristic way of prescribing that appellate courts be just about entirely deferential to default relief decisions by trial judges, upsetting them only rarely and with the greatest provocation.